UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMAD NEMER BAZZI,

    Plaintiff,

v.                                                  Case No. 14-11205

                                                    HON. AVERN COHN

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

    Defendant.
_____/

**<u>MEMORANDUM AND ORDER</u>**
**<u>GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. 14) AND</u>**
**<u>DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 13)</u>**

## I. INTRODUCTION

This is a social security case. Plaintiff Mohamad Nemer Bazzi (Plaintiff) appeals from the final decision of the Acting Commissioner of Social Security (Commissioner) denying his application for Social Security Disability Benefits. Plaintiff claims disability since June 20, 2011, due to post-anterior cruciate ligament (ACL) reconstruction of his right knee, spondylosis of the lumbar spine, generalized anxiety disorder, and major depressive disorder. (Tr. at 20)

The parties filed cross motions for summary judgment. (Docs. 13, 14) The motions were referred to a Magistrate Judge (MJ) for a report and recommendation (R&R). The MJ recommends that the Court deny Plaintiff's motion for summary judgment and grant the Commissioner's motion.

1

Now before the Court is Plaintiff's Objection to the R&R. (Doc. 19) For the following reasons, the Court will adopt the R&R as the findings and conclusions of the Court. The Commissioner's Motion for Summary Judgment (Doc. 14) is GRANTED and Plaintiff's Motion for Summary Judgment (Doc. 13) is DENIED.[1]

## II. BACKGROUND

The R&R sets forth the facts, many of which are repeated here. Plaintiff applied for disability benefits in January 2012, alleging that he was disabled and unable to work since June 28, 2011, at age 39, due to post-ACL reconstruction of his right knee, spondylosis of the lumbar spine, generalized anxiety disorder, and major depressive disorder. (Tr. at 19-20) The Social Security Administration (SSA) denied Plaintiff's claim, and Plaintiff requested a hearing before an ALJ.

### A. The ALJ's Decision

After considering evidence presented at the hearing and in the record, the ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary work, provided the work was within Plaintiff's specific physical limitations. (Tr. at 22) In addition, the ALJ determined that Plaintiff must be limited to work that is simple, routine, and repetitive. (*Id.*) The ALJ relied on the opinion of vocational expert Don K. Harrison, PhD, who testified that given all of the factors, "[Plaintiff] would be able to perform the requirements of representative occupations that exist in Southeastern Michigan . . ." (Tr. at 30) In reaching his decision, the ALJ considered Plaintiff's own

---

[1] The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

testimony, weighed the medical assessments, and evaluated Plaintiff's credibility as described below.

### 1. Plaintiff's Testimony

Plaintiff was 41 years old at the time of the administrative hearing. (Tr. at 19) Plaintiff has a 7th grade education and has past work as a construction worker.

At the administrative hearing, Plaintiff testified that he is unable to work due to a combination of symptoms. Plaintiff testified that he is able to attend to his personal care needs. (Tr. at 21) However, Plaintiff stated that he "feels bad" that he is unable to play with his four children and spends most of his days in his unfinished basement. (*Id.*) He testified that he watches movies, reads books, watches television for 1 ½ hours at a time, and is capable of managing his personal benefit funds (*Id.*) Plaintiff has a driver's license and is able to drive short distances, though he rarely goes to the store. (Tr. at 23)

### 2. Plaintiff's Physical Assessments

The ALJ began by describing a function report from February 2012 stating that Plaintiff is unable to kneel, climb stairs, walk more than one mile, or lift any weight. The report stated that Plaintiff could attend to his personal care needs, including dressing, bathing, caring for hair, shaving, feeding himself, and using the toilet. However, Plaintiff needs assistance in putting on his pants and bathing because he is unable to stand for prolonged periods. (*Id.*)

The ALJ described the surgical repair of Plaintiff's meniscal tear of the right knee in April 2008, and the arthroscopic repair of a torn meniscus with cyst and degeneration of the meniscus in January 2009. In 2010, Plaintiff was diagnosed with derangement of

the right knee with torn meniscus and partial tear of the ACL that was treated with physical therapy. (*Id.*)

The ALJ also described the June 28, 2011 state consultative physical examination by Leonidas Rojas, M.D. Dr. Rojas stated that that Plaintiff complained of right knee pain with occasional mild swelling, which is aggravated by standing or walking for relatively short periods of time. (Tr. at 384) Dr. Rojas' examination stated that Plaintiff had "mild difficulty" standing up from a chair but "seemed well oriented," and noted "mild tenderness" in the right knee but no gross swelling or deformities. Dr. Rojas said that Plaintiff wore a brace on his right knee and used a cane while walking. Dr. Rojas diagnosed Plaintiff with meniscal tear of the right knee, right cervical radiculopathy, and chronic depression. (Tr. at 385)

In November 2011, Plaintiff sought treatment for continued right knee pain, and underwent a partial meniscectomy and reconstruction of the ACL in December 2011. The treatment notes from early 2012 indicate that Plaintiff was doing well after surgery and walking well, and that his pain was mostly gone, other than some pain over the site of the wound. (Tr. at 481) Although Plaintiff required an ACL brace for physical activity and sports, the treatment notes state that Plaintiff's knee was strong and stable. (Tr. at 482)

During 2011 and 2012, Plaintiff received treatment for complaints of snoring and daytime sleepiness. Physical examinations from these treatments reported that Plaintiff was "alert and oriented to person, place and time. Mood and affect are normal without evidence of depression or agitation." (Tr. at 397, 691)

### 3. Plaintiff's Mental Assessments

4

The ALJ further considered Plaintiff's complaints of anxiety and depressive symptoms. In his analysis, the ALJ described the reports from several consultative psychological examinations, including the opinions of several non-treating physicians, and made determinations on the relative weight to be assigned each.

First, the ALJ described the consultative psychological examination by Terrence Mills, PhD, and Suzann McKenna, M.A. This one-time examination was performed at the request of the state agency on June 28, 2011. The examination revealed that Plaintiff demonstrated contact with reality; had spontaneous, logical, and organized mental activity; depressed and anxious emotional reactions; difficulty with memory due to depression, pain, and anxiety; and difficulty recalling information and with calculations. (Tr. at 393-94)  Dr. Mills diagnosed Plaintiff with major depressive disorder, generalized anxiety disorder, and a global assessment functioning (GAF) score of 50-55 (*Id.*), and stated, "[Plaintiff] is not able to do work related activities in part due to his depression and anxiety." The ALJ noted, however, that Dr. Mills stated Plaintiff demonstrated "sufficient mental ability to manage his own benefit funds." (*Id.*)

Next, the ALJ described the February 2, 2013, one-time consultative psychological examination by Firoza Van Horn, M.D. Dr. Van Horn reported that Plaintiff was visibly depressed. Dr. Van Horn completed a check-box RFC assessment, indicating that Plaintiff was "seriously limited, but not precluded" from performing most of the listed work activities. (Tr. at 510). Dr. Van Horn stated that Plaintiff was "limited but satisfactory" in his ability to maintain regular attendance, perform a consistent pace, understand and remember detailed instructions, and carry out detailed instructions. Dr. Van Horn did not

indicate did that Plaintiff was "unable to meet competitive standards" or had "no useful ability to function" for any of the listed abilities. (*Id.*)

In her psychological assessment, Dr. Van Horn reported that although Plaintiff demonstrated poor attention and concentration, difficulty with calculations, and a sad and depressed effect, he had good immediate memory but difficulty with remote memory; goal-directed thought with a logical progression; no signs of confusion; appropriate thought content; coherent speech; general knowledge commensurate with educational background; and a calm mood. Dr. Horn diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and a GAF score of 45. Dr. Horn concluded that Plaintiff was "markedly impaired" in his mental ability to relate to others; to understand, remember, and carry out simple tasks; and to maintain attention, concentration, persistence, and pace to perform routine tasks. (Tr. at 516)

### *4. The ALJ's Assignment of Weight*

The ALJ gave limited weight to Dr. Mills' conclusions that Plaintiff was unable to "do work activities in part due to depression and anxiety." The ALJ stated that this conclusion was "vague, ambiguous, and not well supported by the clinical findings"—in particular, the fact that Plaintiff's mental activity was "logical and organized," or "the objective findings from other physicians." The ALJ further explained that Dr. Mills' assessment was "inconsistent with the consultant's conclusion that the claimant is capable of managing his benefit funds." The ALJ noted that Plaintiff was "repeatedly assessed with normal mood and affect with no evidence of depression, anxiety, or agitation," referencing two treatment records from Plaintiff's 2011 and 2012 sleep studies. The ALJ also recalled Dr. Rojas' statement from her 2011 physical examination that

6

Plaintiff appeared "well oriented." The ALJ also referenced the 2013 psychological evaluation by Dr. Horn, which found that Plaintiff had goal-directed thoughts that followed a logical progression with no signs of confusion. Finally, the ALJ stated that Plaintiff demonstrated the ability to concentrate and answer questions appropriately during the hearing and testified in an articulate manner, and although Plaintiff displays some limitation in memory and attention, it is not to such a degree that he should be precluded from performing simple, unskilled work.

The ALJ gave limited weight to Dr. Van Horn's opinion because it was "internally inconsistent, not well supported by the clinical findings, and [was] based solely upon a one-time examination of [Plaintiff]." The ALJ stated that although Dr. Van Horn indicated that Plaintiff had marked limitations in the ability to carry out simple tasks, she also reported that Plaintiff had a satisfactory ability to understand, remember, and carry out detailed instructions. In addition, the ALJ noted that Plaintiff's symptoms described in Dr. Van Horn's clinical report differed substantially from those described by other treating and examining—particularly those from the sleep studies and from Dr. Rojas. Finally, the ALJ noted that Dr. Van Horn stated that Plaintiff expressed goal-directed thoughts and a logical thought process, could stay on topic and not be easily distracted, and showed no signs of confusion—suggesting that Plaintiff's responses to other aspects of the mental status examination were exaggerated.

### *4. The ALJ's Credibility Determination*

The ALJ stated that although Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, "[Plaintiff's] statements

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr. at 27)

The ALJ explained that the degree of symptoms Plaintiff alleges are due to back/knee pain and depression/anxiety are not consistent with the objective medical evidence. The ALJ stated that Plaintiff's objective physical and psychological examination findings do not support Plaintiff's complaints of severe symptoms brought on by his disabling pain or mental illness. The ALJ stated that although "the objective evidence indicates [Plaintiff] experiences some [mental] limitation," it is not "to such a degree that he is prevented from performing sustained work at the modified sedentary exertional level." (Tr. at 27)

The ALJ also found that Plaintiff's statements are "significantly inconsistent with the overall medical record and other information in the record." The ALJ said that Plaintiff repeatedly provided varying information regarding his education level, work history, nature of his right knee injury, nature and intensity of his symptoms, functional abilities, use of a cane, and compliance with recommended treatments. The ALJ said that this "suggests [Plaintiff] has exaggerated his symptoms and limitations on issues related to disability" and that "the information provided by [Plaintiff] regarding the intensity, frequency, and duration of symptoms generally may not be entirely reliable." (Tr. at 28)

Finally, the ALJ explained that although Plaintiff does have a mental impairment, he has not sought treatment for his symptoms. The ALJ concluded that this failure to "seek examination and treatment for the condition reflects poorly on the credibility of the claimant and the assertions that the condition is disabling." (*Id.*)

### B. Plaintiff's Objections to the R&R

Plaintiff requested a review of the ALJ's decision. The Appeals Council (AC) declined to review Plaintiff's case, finding no reason to disturb the findings of the ALJ. Plaintiff filed the instant action for judicial review of the denial of benefits. The parties filed cross motions for summary judgment (Docs 13, 14), which were referred to the MJ. The R&R rejected Plaintiff's assertions and found that there was substantial evidence in the record to support the ALJ's decision.

Plaintiff has advanced three primary objections. First, Plaintiff argues that the ALJ erred in discounting the opinions of Dr. Mills, whose opinion supported a finding of disability. Second, he similarly argues that the ALJ erred in discounting the opinion of Dr. Van Horn. Third, he argues that the ALJ's finding that Plaintiff could perform simple, routine, repetitive work is unsupported by substantial evidence. Lastly, Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

### III. STANDARD OF REVIEW

Once the Appeals Council concludes there is no reason to alter the ALJ's decision and denies a claimant's request for review, the decision of the ALJ becomes the final administrative decision of the Commissioner. 20 C.F.R. § 416.1484(b)(2). This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

9

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); see also *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that the Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citations omitted).

Further, this Court does "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## IV. DISCUSSION

### A. Weight Assigned to Dr. Mills' and Dr. Van Horn's Opinions

#### *1. Controlling Authority*

The Social Security Administration requires that the most weight be given to opinions from a claimant's treating source; accordingly, the ALJ is procedurally required to give "good reasons" for discounting treating physicians' opinions, that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4). "However, this requirement only applies to *treating* sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citation omitted) (emphasis in original).

Nonetheless, regardless of the source, the ALJ must use a six-factor balancing test to determine the probative value of the medical opinion. The ALJ must consider: the examining relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(c).

#### *2. The ALJ Properly Weighed Dr. Mills' Opinion*

In his first claim of error, Plaintiff says that the ALJ erred in rejecting Dr. Mills' opinion as "vague, ambiguous, and not well supported by the clinical findings"—

particularly the finding that Plaintiff's mental activity was "logical and organized" or the "objective findings from other physicians." Plaintiff says that is it unclear what "objective findings from other physicians" the ALJ was referencing. Plaintiff's arguments are without merit.

To begin, Dr. Mills was not a treating physician, but an examining source that conducted a one-time state consultative psychological examination. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) ("A 'nontreating source' (but examining source) has examined the claimant 'but does not have, or did not have, an ongoing treatment relationship with' [him].").  Therefore, Dr. Mills' opinion is not entitled to the controlling weight of a treating source opinion.  Instead, the ALJ was required to weigh Dr. Mills' medical opinion, in part, on the length of the relationship, the frequency of examination, and the nature and extent of the treating relationship. *Wilson*, 378 F.3d at 544. The ALJ may also consider the supportability of the opinion, consistency of the opinion with the record as a whole. *Id.*

Here, the ALJ provided sufficiently good reasons for discounting Dr. Mills' opinion that Plaintiff is "not able to do work related activities in part due to his depression an anxiety."  The ALJ said that Dr. Mills' opinion was "vague and ambiguous"—an appropriate observation, considering that Dr. Mills' assessment contained no description of Plaintiff's ability to perform work-related activities. In addition, the ALJ referenced the findings of other physicians who found Plaintiff to have normal mood and affect, no evidence of depression, anxiety, or agitation, and to be well-oriented. (Tr. at 385, 397, 691) The ALJ also referenced Dr. Van Horn's evaluation, which found that Plaintiff exhibited goal-directed thoughts following a logical progression with no signs of

confusion. In addition, Dr. Van Horn's evaluation consistently reported that Plaintiff was, at most, "seriously limited, but not precluded" from performing most of the listed work activities. Finally, the ALJ stated that Plaintiff demonstrated the ability to concentrate, answer questions, and testify in an articulate manner.

On balance, the ALJ provided good reason for not giving Dr. Mills' opinion controlling weight, and the Court can engage in a meaningful review of the ALJ's decision. The ALJ's decision to discount Dr. Mills' opinion is therefore supported by substantial evidence and must be affirmed.

### *3. The ALJ Properly Weighed Dr. Van Horn's Opinion*

Next, Plaintiff says that the ALJ erred in giving Dr. Van Horn's opinion limited weight because it was "internally inconsistent, not well supported by the clinical findings, and is based solely on a one-time examination." Here too, Plaintiff's arguments are without merit.

To begin, Dr. Van Horn observed that Plaintiff was "limited but satisfactory" in his ability to maintain regular attendance, perform at a consistent pace, understand and remember detailed instructions, and carry out detailed instructions. The ALJ explained that these findings are inconsistent with Dr. Van Horn's determination that Plaintiff had a "marked limitation" in the ability to understand, remember, and carry out simple tasks, and to maintain attention, concentration, persistence, and pace to perform routine tasks. As with Dr. Mills, the ALJ also stated that Dr. Van Horn's findings were substantially different from the findings of other treating or examining physicians.

Here as well, the ALJ provided good reason for giving Dr. Van Horn's opinion limited weight, and the Court can engage in a meaningful review of the ALJ's decision. The ALJ's decision is therefore supported by substantial evidence.

### B. Substantial Evidence Supporting the ALJ's Decision

Next, Plaintiff argues that the ALJ's finding that he could perform simple, routine, repetitive work is unsupported by substantial evidence. Plaintiff says that the ALJ erred by substituting his own medical judgment for that of Plaintiff's examining sources. This argument is without merit.

Throughout the record, the ALJ noted that Plaintiff's medical records reveal that his complaints of severe symptoms associated with disabling pain and mental illness are not supported by the objective diagnostic findings. The ALJ stated that Plaintiff's medical records also do not contain evidence of abnormal psychiatric symptoms associated with a disabling mental impairment. The ALJ concluded that although Plaintiff experiences some limitations, they do not reach such a degree that he is prevented from performing sustained work at the modified sedentary exertional level, limited to simple, routine, and repetitive tasks.

As discussed above, the ALJ considered a wide range of evidence regarding Plaintiff's physical and mental limitations, including Plaintiff's own testimony and numerous medical assessments. These considerations provide at least minimal weight to the ALJ's determination. Further, the ALJ did not substitute his own medical judgment for that of Plaintiff's examining sources. Aside from the ALJ's observation that Plaintiff demonstrated the ability to concentrate, answer questions, and testify in an articulate

manner at the hearing, each of the ALJ's findings were supported by appropriate reference to Plaintiff's medical records.

For these reasons, the ALJ's finding that Plaintiff could perform simple, routine, repetitive work is supported by substantial evidence.

### C. The ALJ's Credibility Determination

Finally, Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence. The record, however, establishes otherwise.

Although any credibility assessment made by an ALJ must be supported by substantial evidence in the record, the ALJ's findings regarding a claimant's credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). However, an ALJ's determination on credibility is not immune from review. An ALJ's credibility determination must also contain "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186 (July 2, 1996).

Here, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of these symptoms are not entirely reliable." As described above, the ALJ considered several factors in evaluating the credibility of Plaintiff's allegations and provided numerous reasons why Plaintiff's claims were not credible. First, the ALJ explained that the degree of symptoms Plaintiff alleges are due to back/knee pain and depression/anxiety are not consistent with the objective medical

evidence. The ALJ also found that Plaintiff's statements were inconsistent with other information in the record, and noted several internal inconsistencies in Plaintiff's testimony. Finally, the ALJ explained that Plaintiff has not sought treatment for his symptoms, which reflects poorly on the credibility of his assertions that the conditions are disabling.

The ALJ's findings related to Plaintiff's credibility are well founded and consistent with the record as a whole. Therefore, the ALJ provided specific reasons for his credibility determination, which were supported by substantial evidence in the record.

## V. CONCLUSION

For the reasons stated above, the R&R is adopted as the findings and conclusions of the Court, supplemented as above. Plaintiff's motion for summary judgment has therefore been denied, and the Commissioner's motion for summary judgment granted. This case is DISMISSED.

SO ORDERED.

               s/Avern Cohn
               UNITED STATES DISTRICT JUDGE

DATED: March 18, 2015

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 18, 2015, by electronic and/or ordinary mail.

               s/S. Chami
               Case Manager, (313) 234-5160